## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

DAVID MEYERS, #1039777,
                    Petitioner,

v.                                                      Action No. 2:19cv234

HAROLD CLARKE,
Director, VADOC,
                    Respondent.


### UNITED STATES MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATION

This matter is before the Court on David Meyers' *pro se* petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254, and the motion to dismiss filed by respondent Harold W. Clarke,

Director of the Virginia Department of Corrections ("respondent").  This matter was referred to

the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C.

§ 636(b)(1)(B) and (C) and Rule 72 of the Local Civil Rules of the United States District Court

for the Eastern District of Virginia.  ECF No. 50.  For the following reasons, the Court

**RECOMMENDS** that respondent's motion to dismiss, ECF No. 45, be **GRANTED,** and that the

petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE**.

### I.        STATEMENT OF THE CASE

In his *pro se* petition pursuant to 28 U.S.C. § 2254, petitioner David Meyers ("Meyers")

alleges his federal rights were violated when he was convicted, following a jury trial in the Circuit

Court for the City of Petersburg on March 6–7, 2014, of robbery, malicious wounding, two counts

of abduction, and four counts of use of a firearm in the commission of a felony.  ECF No. 1 ("Pet.")

at 1; *Commonwealth v. Meyers*, No. CR1211-01, 1248–1255-01 (Va. Cir. Mar. 6–7, 2014). Meyers was sentenced to 30 years in prison.  ECF No. 1 at 1.

On April 10, 2015, the Court of Appeals of Virginia denied Meyers' appeal, and a three-judge panel denied the appeal on May 26, 2015.  *Meyers v. Commonwealth*, No. 1263-14-1 (Va. App. May 26, 2015).

The Supreme Court of Virginia granted Meyers an appeal on May 5, 2016.  *Meyers v. Commonwealth*, No. 150962 (Va. May 5, 2016).  Following briefing, the court affirmed Meyers' convictions on January 12, 2017.  ECF Nos. 46-1, 46-2, 46-3, 46-4.  The Supreme Court of Virginia summarized the trial evidence as follows:

> On Sunday, January 29, 2012, Maurice Rives and his girlfriend, Shereasa McDaniel,[1] were at their home with another friend, Edward Foxx.[2]  Rives was preparing to throw McDaniel a birthday party and was setting up music for the party.  Shortly before 9:00 p.m., Foxx told Rives that he heard a knock at the door.  After waiting for a few minutes and asking who was at the door, Rives opened the door.  A man wearing "half a mask with a hoodie" and another man wearing a hoodie with the hood tied so tightly that only his eyes were visible entered the house with guns and began yelling, "Give it up," referring to money.  One of the men hit Rives in the head with a pistol, causing Rives to fall to the floor.  Rives began throwing money, totaling roughly $700, from his pockets onto the floor.  He was in possession of this money because McDaniel had recently obtained an insurance settlement after a car accident.
>
> The man wearing the hoodie tied tightly around his face went over to Foxx, who was on the couch, pointed a gun at him, and demanded that he also "give it up."  McDaniel, unaware of the intruders, came down the hallway from the back of the house to let Rives know that she was going to take a shower before the party. She saw the two men standing by the fish tank in the front room with guns in their

---

[1] Prior to the trial, Shereasa McDaniel and Maurice Rives were married, and her name became Shereasa McDaniel Rives.  March 6, 2014 Tr. 58.

[2] Edward Foxx's name is spelled with one x in the trial transcript, but with two xx's in the Supreme Court of Virginia opinions and the petition.  March 6, 2014 Tr. 79; ECF No. 1 at 28; ECF No. 46-4 at 1; ECF No. 46-6 at 11.

hands.  She heard one of the men saying, "Oh, that bitch know where the money at," and identified that man in court as Meyers.  Meyers, the man with the hoodie tied around his face, then left Foxx and pointed his gun at McDaniel's head.  He led her toward the back of the house, asking her, "Where the money at, bitch?"

Meanwhile, Rives and the half-masked intruder engaged in a loud scuffle as Rives tried to wrestle the gun away.  When Meyers heard the commotion as he led McDaniel to the back of the house, he turned and went back down the hallway, shooting his gun.  He shot Rives a total of three times, once to his back and once to each side.  McDaniel escaped out the back door of her house and went to a neighbor's house for safety and to call the police.  Meanwhile, the intruders escaped out the front door and walked down the street before taking off at a run.

Initially, McDaniel told police that she thought the man who led her to the back of the house was a man named "Zo."  At trial, however, she testified that later at the hospital she realized her attacker was Meyers when she remembered that Meyers had been to her house the week prior to the robbery.  When questioned at the hospital on the night of the shooting and the day after, Rives—who had been shot multiple times and was heavily medicated—told the police both times that he did not know who the robbers were, although he stated that one of them looked like the delivery driver from a Chinese restaurant.  Two days later, however, he told the detective that it was Meyers who had shot him and identified Meyers in a photo lineup.  Rives also identified Meyers at trial and testified that he was certain it was Meyers who shot him because he had known Meyers since he was 13 years old (for nearly 20 years at the time of the trial in March of 2014).

ECF No. 46-4 at 1–2 (citations to joint appendix omitted).  The Supreme Court of Virginia denied

Meyers' petition for rehearing on April 14, 2017.  *Meyers v. Commonwealth*, No. 150962 (Va.

Apr. 14, 2017).

Meyers filed a *pro se* petition for a writ of habeas corpus in the Supreme Court of Virginia

on April 17, 2017.  *Meyers v. Clarke*, No. 170505 (Va. Apr. 17, 2017).  Meyers' counsel filed an

amended petition on March 23, 2018.  ECF No. 46-5.  The Supreme Court of Virginia refused

Meyers' amended petition on April 12, 2019.  ECF No. 46-6.

On June 14, 2019, Meyers filed a *pro se* petition for a writ of habeas corpus in the Circuit Court for the City of Petersburg, which was dismissed as untimely and successive on August 9, 2019. *Meyers v. Clarke*, No. CL19-492 (Va. Cir. Aug. 9, 2019).

Meyers timely placed the pending federal petition for a writ of habeas corpus in the prison mailing system on April 12, 2019.  ECF No. 1 at 19.  Meyers presents the following grounds for relief:

(1)    he was denied effective assistance of counsel due to counsel's failure to inform him of exculpatory evidence;

(2)    he was denied the right to call alibi witness Ernest Jones;

(3)    he was denied effective assistance of counsel due to counsel's failure to:

(a)    subpoena Petersburg Area Transit Bus Videos;

(b)    Southside Regional Jail phone calls between Meyers and Sheila Crockett;

(c)    Southside Regional Jail phone calls between Meyers and Terrance Smith;

(4)    juror Latasha Henderson was a cousin of the victim, Maurice Rives, and biased;

(5)    he was denied effective assistance of counsel due to counsel's failure to seek possession of two cellphones belonging to Meyers that were seized by police;

(6)    the testimony of Latitia Browder was improperly limited;

(7)    he was denied effective assistance of counsel due to counsel's failure to:

(a)(1)   obtain bus videos;

(a)(2)   obtain cell tower records;

(b)(1)   allow Meyers to testify about his injuries;

(b)(2)   subpoena a federal probation officer, an Assistant United States Attorney, and a federal judge;

(B)    he was denied effective assistance of counsel due to counsel's failure to:

    (3)[3]    subpoena Greg Brown and Tommy Williams, who had exculpatory information;

    (4)    attack the credibility of the witnesses who testified against Meyers;

    (5)    subpoena a camera system from Rives' home;

    (6)    "thoroughly" cross-examine Edward Foxx concerning his criminal history;

    (7)    subpoena Meyers' jail records from Riverside Regional Jail;

    (8)    subpoena a recording of the police interrogation of Terrance Smith;

    (9)    "file [an] objection to trial due to petitioner['s] feebleminded[ness]";

    (10)    subpoena Meyers' "alibi witnesses and exculpatory witnesses";

(C)    he was denied effective assistance of counsel due to:

    (1)    counsel's "diminishing [Meyers'] defense";

    (2)    failure to submit a discovery motion concerning "the large quantity of narcotics" recovered from Maurice Rives;

    (3)    making "remarks to the jury that [Meyers] was guilty of crimes";

(D)    he was denied effective assistance of counsel due to counsel's moving to sever the trial of a charge of possessing a firearm after having previously been convicted of a felony from the underlying offenses for which Meyers was convicted;

(E)    he was denied effective assistance of counsel due to counsel's:

    (1)    waiving Meyers' right to submit a notice of alibi;

    (2)    prejudicing Meyers' right to call alibi witnesses on his behalf;

(F)    he was denied effective assistance of counsel due to counsel's:

    (1)    colluding with the prosecution and subjecting Meyers to malicious prosecution;

---

[3] Meyers' petition does not include grounds (A), (B)(1), or (B)(2).  *See* Pet. 27–28.

     (2)     failure to strike members of the venire who had previously served in the military;

     (3)     failure to inform the jury of Meyers' allegation that he had previously been the subject of a "slanderous robbery charge" brought by the prosecution in 1998;

(G)     he was denied effective assistance of counsel due to counsel's opening statement;

(H)     he was denied effective assistance of counsel due to counsel's:

     (1)     failure to "comment on the date of the line up";

     (2)     failure to question law enforcement witnesses concerning the location at which evidence was found;

     (3)     failure to provide photographs of the evidence to the jury;

     (4)     failure to investigate "the viability of recordings obtained from the camera system installed at Rives' home";

     (5)     failure to develop the timeline of Detective Geist's interview of Maurice Rives;

     (6)     failure to fully cross-examine the victims and police officers who testified at trial;

     (7)     pressuring Sheila Crockett, an alleged alibi witness, into changing her testimony;

(I)     he was denied effective assistance of counsel due to counsel's failure to obtain telephone records between Meyers and Sheila Crockett, which would have established Meyers' alibi;

(J)     he was denied effective assistance of counsel due to counsel's failure to obtain Meyers' jail admission records, in an effort to undermine credibility of testimony provided at trial by Shereasa Rives;

(K)     he was denied effective assistance of counsel due to counsel's leaving the courtroom during the trial to converse with a witness, Letitia Brewer;

(L)     he was denied effective assistance of counsel due to counsel's failure to effectively argue Meyers' innocence to the jury;

(M)     he was denied effective assistance of counsel due to counsel's "waiving" Meyers' defense based upon "feeblemindedness" and in failing to move for a more recent psychological evaluation;

(N)     he was denied effective assistance of counsel due to counsel's failure to respond to the trial court's answer regarding a jury question concerning the date on which a line up was conducted;

(O)     he was denied effective assistance of counsel due to counsel's failure to exhibit Meyers' physical injuries to the jury, which injuries would have prevented him from firing a pistol; and

(P)     prospective juror Latasha Henderson failed to disclose her connection to the victims.

ECF No. 1 at 6–7, 9, 11, 13, 21–30.  Meyers filed a declaration in support of his petition on July 2, 2019.  ECF No. 22.

On September 6, 2019, respondent filed an answer to the petition, pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, and a motion to dismiss the petition, along with a supporting memorandum.  ECF Nos. 44–46.  Meyers filed a response to the motion to dismiss on September 11, 2019.  ECF No. 51.

## II.     ANALYSIS

**A.     Several of Meyers' claims have been simultaneously exhausted and procedurally defaulted—Grounds 3(a), 3(c), 5, 6, 7(a)(1), 7(b)(2), B(4), B(8), F(1)–(3), H(1)–(3), H(5)–(7), and N.**

Before addressing Meyers' claims, the Court must determine whether Meyers exhausted his remedies in state court, *see* 28 U.S.C. § 2254(b), and determine if such claims were procedurally defaulted in state court.  *See Fisher v. Angelone*, 163 F.3d 835, 844, 851 (4th Cir. 1998).  A federal court cannot grant a writ of habeas corpus to a person in custody pursuant to a state court judgment unless that person "has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  The exhaustion doctrine ensures that state courts have a

meaningful opportunity to consider claims alleging constitutional violations before those claims are presented to a federal court. *Rose v. Lundy*, 455 U.S. 509, 515 (1982). The exhaustion requirement is satisfied when the "essential legal theories and factual allegations advanced in federal court [are] the same as those advanced at least once to the highest state court." *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991). Exhaustion may be achieved either through direct appeal or in post-conviction proceedings. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (citing *Brown v. Allen*, 344 U.S. 443, 447 (1953)).

Meyers' claims 3(a), 3(c), 5, 6, 7(a)(1), and 7(b)(2) have not been presented to the Supreme Court of Virginia on direct appeal or collateral review (habeas proceedings). In addition, claims B(4), B(8), F(1)–(3), H(1)–(3), H(5)–(7), and N were raised in Meyers' *pro se* petition to the Supreme Court of Virginia, but were not included in the amended petition filed by Meyers' counsel. Accordingly, these claims were not exhausted, as they were withdrawn prior to the court's ruling on the petition.

This does not, however, end the exhaustion inquiry. Instead, "[a] claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000); *see Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (describing the procedural default doctrine as a "distinct but related limit on the scope of federal habeas review"). Simultaneous exhaustion and procedural default occur "when a habeas petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). In that instance, "the procedural bar that gives rise to

exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim." *Baker*, 220 F.3d at 288.

Before finding a procedural default, it must be "clear" that the pertinent claims are now procedurally barred based upon a state law providing an independent and adequate ground for dismissal. *Gray v. Netherland*, 518 U.S. 152, 161 (1996); *Breard*, 134 F.3d at 619 (citing *Coleman*, 501 U.S. at 731–32)*.* A state procedural rule is adequate if it is "regularly or consistently applied by the state courts." *McNeill v. Polk*, 476 F.3d 206, 211 (4th Cir. 2007) (citing *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988)). A state procedural rule is independent "if it does not depend on a federal constitutional ruling." *Id.* (citing *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)).

Any attempt by Meyers to file a new state petition for a writ of habeas corpus raising these claims would be barred as successive under Virginia Code § 8.01-654(B)(2). *See Pope v. Netherland*, 113 F.3d 1364, 1372 (4th Cir. 1997) (holding that the successive petition rule in Virginia Code § 8.01-654(B)(2) is an adequate and independent state law ground barring federal habeas review). Thus, these claims can be treated as exhausted because they would be procedurally barred under state law if Meyers attempted to present the claims to the state court. *Baker*, 220 F.3d at 288. "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Id.* (citation and quotation marks omitted).

**B.    No cause exists to excuse Meyers' procedural default.**

A petitioner may overcome procedural default and obtain federal merits review if he can "demonstrate cause and prejudice for the default or demonstrate that failure to review the claims

will result in a fundamental miscarriage of justice." *Edwards v. Johnson*, No. 2:10cv339, 2010 WL 5825427, at *3 (E.D. Va. Dec. 15, 2010) (citing *Coleman*, 501 U.S. at 750, and *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996)).  To show cause to excuse a procedural default, a petitioner must establish that some "objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see Coleman*, 501 U.S. at 753 (noting that a factor external to the defense is one that "cannot fairly be attributed to" the prisoner).

The Supreme Court in *Martinez* ruled that the ineffective assistance of counsel, or the lack of counsel, during an initial-review collateral proceeding may constitute justifiable cause for procedural default in certain circumstances. *Martinez v. Ryan*, 566 U.S. 1, 9, 14, 17 (2012).  An "initial-review collateral proceeding[]" is one that "provide[s] the first occasion to raise a claim of ineffective assistance at trial."[4]  *Id.* at 8; *see Davila v. Davis*, 137 S. Ct. 2058, 2065–66 (2017) (declining to extend the exception to defaulted claims concerning appellate counsel's performance, and noting that the narrow exception allows the ineffective assistance of postconviction counsel to constitute cause to surmount default on a single claim—the ineffective assistance of trial counsel—in states that only allow such claims to be brought in state postconviction proceedings).

"Generally, a federal court may not consider claims that a petitioner failed to raise at the time and in the manner required under state law," but an exception for ineffective assistance claims exists where

> (1) the ineffective-assistance-of-trial-counsel claim is a substantial one; (2) the cause for default consist[s] of there being no counsel or only ineffective counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the initial review proceeding in respect to the ineffective-

---

[4] Under Virginia law, a claim that trial counsel was ineffective "must be asserted in a habeas corpus proceeding and [is] not cognizable on direct appeal." *Lenz v. Commonwealth*, 544 S.E.2d 299, 304 (Va. 2001).

assistance-of-trial-counsel claim; and (4) state law requires that an ineffective assistance claim be raised in an initial-review collateral proceeding.

*Teleguz v. Zook*, 806 F.3d 803, 807–08 (4th Cir. 2015) (citation and quotation marks omitted). Even when such requirements are met, a "finding of cause and prejudice does not entitle the prisoner to habeas relief. It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted." *Martinez*, 566 U.S. at 17.

The exception identified in *Martinez* has no application to Meyers' ground 6 as this ground does not claim ineffective assistance of counsel. The remainder of the procedurally defaulted claims assert ineffective assistance of counsel.

The final three components of the *Martinez* exception are established with respect to Meyers' procedurally defaulted claims. Meyers has asserted he was denied effective assistance of counsel during the state collateral review proceeding (factor 2); the state collateral review was the initial review of his claim based on the ineffective assistance of trial counsel (factor 3); and, under *Lenz v. Commonwealth*, 544 S.E.2d 299, 304 (Va. 2001), Virginia law requires that such an ineffective assistance of trial counsel claim be raised in a collateral proceeding (factor 4). This Court must determine whether the ineffective assistance claims in the procedurally defaulted grounds are "substantial," such that the first factor for this exception is established. Only if this exception is established can the Court review the merits of Meyers' defaulted habeas claims. *Teleguz*, 806 F.3d at 807. A claim is "insubstantial" if it "is wholly without factual support." *Martinez*, 566 U.S. at 16.

1. ***Strickland v. Washington* provides the standard of review for ineffective assistance of counsel claims.**

The applicable standard for determining if counsel was ineffective is set forth in *Strickland v. Washington*, 466 U.S. 668, 687–700 (1984), and requires a petitioner to show that his defense

counsel provided assistance that (1) fell below an objective standard of reasonableness, and (2) prejudiced petitioner as a result.  To establish that counsel's performance fell below an objective standard of reasonableness, Meyers must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 687.  In doing so, Meyers must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'"  *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689).

To establish prejudice, Meyers must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  This requires Meyers to establish "probability sufficient to undermine confidence in the outcome," rather than a mere showing that "the errors had some conceivable effect on the outcome of the proceeding."  *Id*. at 693–94.  A federal habeas court need not address both cause and prejudice if the petitioner makes an insufficient showing on either one. *Id*. at 697.

### 2.     Grounds 3(a), 3(c), 5, 7(a)(1), 7(b)(2), B(4), B(8), F(1)–(3), H(1)–(3), H(5)–(7), and N do not state substantial ineffective assistance of counsel claims.

In grounds 3(a) and 7(a)(1), Meyers asserts counsel was ineffective in failing to subpoena bus videos, which Meyers contends would have shown Ernest Jones driving Meyers to Crockett's home.  Pet. 11, 23.  There is no evidence in the record that these videos existed, and if so, what they would have depicted.

Had counsel acquired videos from the bus system showing Jones driving Meyers to Crockett's house, such evidence would have done little to assist Meyers' defense.  Prior to trial, Crockett told police that Meyers arrived at her house at 7:00 or 7:30 p.m. on the night of the offenses, then left for an hour or hour and a half, returning at 9:00 or 9:30 p.m. *See* Trial Tr. March

7, 2014 ("March 7, 2014 Tr.") 27–28, 37–38 (audiotape of Crockett's interview by police, and Crockett's trial testimony discussing audiotape).  According to Meyers, videos from the bus system may have shown Jones dropped Meyers off at Crockett's house at 7:30 p.m. the night of the crimes. Pet. 11, 23.  These videos could not show where Meyers was at 8:44 p.m., the time of the crimes, and could not contradict Crockett's expected testimony.  *See* Trial Tr. March 6, 2014 ("March 6, 2014 Tr.") 22–23 (discussing Jones' potential testimony); March 7, 2014 Tr. 51 (Geist testimony regarding time of the offenses).  Meyers has not provided any basis for finding the outcome of his trial would have been different but for counsel's failure to subpoena bus videos, and his claim that counsel's failure to subpoena the videos constituted ineffective assistance is not substantial.  *See Formica v. Superintendent of Cent. Va. Reg'l Jail*, No. 7:14cv357, 2015 WL 5561933, at *13 (W.D. Va. Aug. 21, 2015) (finding unsupported and speculative allegations of ineffective assistance of counsel were not substantial), *report and recommendation adopted,* No. 7:14cv357, 2015 WL 5561952 (W.D. Va. Sept. 21, 2015); *Walton v. Johnson*, 440 F.3d 160, 178 (4th Cir. 2006) (upholding district court's dismissal of petition and finding "conclusory, speculative allegations" cannot support a claim for habeas relief).

In ground 3(c), Meyers asserts counsel was ineffective due to his failure to subpoena Riverside Regional Jail recordings of Meyers' conversations with Terrance Smith, wherein Smith told Meyers about Smith's involvement in the offenses.  Pet. 11.  Meyers offers no affidavit or other evidence to support his self-serving assertion that Smith admitted participating in the offenses in a phone call to Meyers at the jail.  Meyers asserts in ground 5 that counsel was ineffective due to his failure to inform the court that Detective Geist seized two of Meyers' cellphones, and that analysis of the sim cards would reflect calls from Dwayne Smith and Terrance Smith the morning after they robbed and shot Rives.  *Id.* at 21.  Even if the sim card from one of

Meyers' seized phones reflected a call from Dwayne and Terrance Smith the morning after the offenses, this evidence would not aid Meyers' defense.   These unsupported and speculative allegations of ineffective assistance of counsel are not substantial.

Meyers asserts in ground 7(b)(2) that counsel was ineffective due to his failure to subpoena probation officer Cantrell to testify that Meyers had informed the officer that drug dealers were harassing him, and similarly failed to subpoena United States Attorney Olivia Norman and United States District Judge Spencer to testify about Meyers' mental illness.  *Id.* at 27.   Such testimony by these witnesses would have been hearsay, and inadmissible at Meyers' trial.   Meyers has failed to establish a substantial ineffective assistance of counsel claim due to counsel's failure to subpoena these witnesses.

Meyers lists grounds B(4), B(8), F(1)–(3), H(1)–(3), H(5)–(7), and N in his federal petition without providing any facts or argument in support of the listed grounds.  *Id.* at 28–30.   As a result, Meyers has not established that these claims of ineffective assistance of counsel are substantial.   *See Formica*, 2015 WL 5561933, at *13; *see also Walton*, 440 F.3d at 178.

Accordingly, Meyers has failed to establish that cause exists to excuse his procedural default of grounds 3(a), 3(c), 5, 6, 7(a)(1), 7(b)(2), B(4), B(8), F(1)–(3), H(1)–(3), H(5)–(7), and N.

## C.   Meyers has failed to show actual innocence sufficient to open the gateway permitting the Court to address his procedurally barred claims.

The Supreme Court has recognized that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" to bring procedurally defaulted claims and claims raised after expiration of the statute of limitations.  *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *Schlup v. Delo*, 513 U.S. 298, 314–16 (1995); *Finch v. McKoy*, 914 F.3d 292, 294 (4th Cir. 2019). "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable

discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Herrera v. Collins,* 506 U.S. 390, 404 (1993) (citation omitted). It "seeks to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." *Schlup,* 513 U.S. at 324.

To establish actual innocence predicated upon constitutional error, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623 (1998). The exception requires "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup,* 513 U.S. at 324. If a petitioner provides the court with reliable, newly discovered evidence of his actual innocence, then the court weighs the new evidence in light of the previous admissible and inadmissible evidence and makes a "probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* at 329.

The *Schlup* standard is an exceedingly high burden to satisfy and only permits review in "extraordinary" cases. *House v. Bell,* 547 U.S. 518, 538 (2006) (citation and quotation marks omitted); *see also Schlup*, 513 U.S. at 327–29. A petitioner's actual innocence claim "does not by itself provide a basis for relief." *Teleguz v. Pearson*, 689 F.3d 322, 328 (4th Cir. 2012) (quotation marks omitted); *see Herrera*, 506 U.S. at 400 (noting that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding[s]"). Instead, a petitioner's "claim of innocence is . . . a gateway through which a habeas petitioner must

pass to have his otherwise barred constitutional claim considered on the merits." *Schlup*, 513 U.S. at 315 (quotation marks omitted); *see also Teleguz*, 689 F.3d at 329.

Meyers suggests throughout his petition that someone else was responsible for the offenses, and that he had an alibi for the time of the offenses. Pet. 9, 11, 21–23, 28–30. Meyers has offered no new, reliable evidence that was not presented at his trial making it more likely than not that no reasonable juror, or judge, would have convicted him. Thus, Meyers has not satisfied the high standard to pass through the actual innocence gateway, and the Court cannot consider his procedurally-barred habeas claims. *See McQuiggin*, 569 U.S. at 397.

**D.    Meyers is not entitled to habeas relief on grounds 1, 2, 3(b), 4, 7(a)(2), 7(b)(1), B(3), B(5)–(7), B(9)–(10), C(1)–(3), D, E(1)–(2), G, H(4), I–M, O, and P, which were addressed on the merits by the Supreme Court of Virginia.**

When a claim has been properly exhausted and adjudicated on the merits in state court, this Court assesses the state court adjudication pursuant to 28 U.S.C. § 2254(d), rather than reviewing the merits of such a claim *de novo*. Section 2254(d) provides that a federal court may not grant relief on any claim that was adjudicated on its merits in state court, unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A state court decision is "contrary to" clearly established federal law when a state court applies a rule different from the governing law articulated by the United States Supreme Court or arrives at a conclusion opposite that of the Supreme Court on materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citation omitted); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). A state court decision constitutes an "unreasonable application" of federal law when

the court identifies the correct governing legal principle from the decisions of the Supreme Court, but unreasonably applies that principle to the facts of the case. *Williams*, 529 U.S. at 413; *see Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that an unreasonable "application of clearly established law must be objectively unreasonable," rather than simply "incorrect or erroneous"). Stated differently, a "prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

"For a state court's factual determination to be unreasonable under [section] 2254(d)(2), it must be more than merely incorrect or erroneous. It must be sufficiently against the weight of the evidence that it is objectively unreasonable." *Winston v. Kelly*, 592 F.3d 535, 554 (4th Cir. 2010) (citation omitted). Pursuant to this deferential standard of review, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Williams*, 529 U.S. at 389.

Because Meyers presents these claims in a section 2254 petition, he must show that the state court's dismissal of his ineffective assistance of counsel claims was contrary to, or an unreasonable application of, the *Strickland* standard, or was predicated upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). To review a claim of ineffective assistance of counsel, the Court must apply "a doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (citation and quotation marks omitted).

The Supreme Court of Virginia's dismissal of Meyers' claims was not contrary to, or unreasonable application of, federal law, and was not predicated upon an unreasonable

determination of the facts in light of the evidence presented.  Therefore, for the reasons discussed below, grounds 1, 2, 3(b), 4, 7(a)(2), 7(b)(1), B(3), B(5)–(7), B(9)–(10), C(1)–(3), D, E(1)–(2), G, H(4), I–M, O, and P, which were addressed on the merits by the Supreme Court of Virginia, should be **DISMISSED**.

### 1.  Ground (1) – Meyers was denied effective assistance of counsel due to counsel's failure to inform him of exculpatory evidence.

Meyers asserts his trial counsel refused to tell him "anything exculpatory as far as evidence in this case."  Pet. 6.  Meyers raised this claim in his state habeas petition, and the Supreme Court of Virginia found he failed to satisfy either prong of the *Strickland* analysis because he failed to "articulate what information counsel failed to share with him or to explain how this alleged failure impacted the outcome of his case."  ECF No. 46-6 at 10.

In his federal petition, Meyers does not elaborate on the claim that counsel failed to discuss evidence with him, or how the outcome of his case would have been different if counsel had discussed the information.  Due to Meyers' failure to proffer facts to support his argument, ground 1 should be **DISMISSED**.  *See Walton*, 440 F.3d at 178 (upholding district court's dismissal of petition and finding "conclusory, speculative allegations" cannot support a claim for habeas relief).

### 2.  Ground (2) – Meyers was denied the right to call alibi witness Ernest Jones.

In ground (2), Meyers asserts he was denied the right to call alibi witness Ernest Jones. Pet. 9.  Meyers asserts Jones could have testified that Crockett was giving false testimony when she stated that Meyers did not come to her house on the night the offenses took place.  *Id.*

The Supreme Court of Virginia addressed Meyers claim on direct appeal, finding:

[W]e hold the trial court did not err by excluding Jones's putative alibi testimony. In fact, the trial court made no ruling excluding any evidence whatsoever.  Before the trial began, Meyers made it known to the trial court that he wished to subpoena Jones as an alibi witness.  Meyers' counsel explained to the trial court that Crockett was the only one who might be able to testify to Meyers' whereabouts during the

time of the crime, but she was present as a Commonwealth witness and was expected to testify that Meyers had left to get her a sandwich during the time the crime occurred.  Meyers' counsel explained to the trial court that Jones would only be able to testify that he dropped Meyers off at Crockett's house around 7:30 p.m. on the night of the robbery and was unaware of where Meyers went after that.  The trial court simply agreed with counsel by saying, "I don't think that is alibi testimony."

Meyers and his counsel remained free to call Jones to the stand at any time, but Meyers' counsel made a strategic decision not to call Jones because he could not testify to Meyers' whereabouts during the time of the crime.  Moreover, Meyers' counsel did re-call Crockett during the defense's case-in-chief after she had testified for the Commonwealth that Meyers was never at her house on the night of the robbery.  He impeached her by questioning her about a taped interview with the police in which she stated that Meyers was at her house on the night of the robbery but had left for an hour or an hour-and-a-half to get her a sandwich.  In other words, Meyers received the benefit of all of the "alibi" testimony that he could have hoped to present when his counsel forced Crockett to admit the conflicting statements in her recorded interview.  Because the trial court did not actually exclude any alibi testimony, it could not have committed the alleged error.

ECF No. 46-4 at 7–8.

Prior to trial, the judge asked Meyers whether he wished to call any witnesses in addition to Latitia Browder, and Meyers stated he wanted to call Ernest Jones to testify that he drove Meyers to Sheila Crockett's house at 7:26 p.m. on the night of the offenses.  March 6, 2014 Tr. 15–17. Meyers' counsel explained that, when interviewed by police, Crockett stated that Meyers came to her house at 7:30 p.m., but left again, returning an hour to an hour and a half later, around 9:00 or 9:30 p.m.  *Id.* at 16–18.  As a result, neither Jones, nor Crockett, could provide Meyers with an alibi for the time of the offenses, between 8:00 and 9:00 p.m.  *Id.*  The judge agreed with Meyers' counsel that Jones' proffered testimony would not constitute evidence of an alibi.  *Id.*

At trial, Crockett testified that Meyers was at her house on Friday and Saturday, but was not at her house on Sunday, the night of the offenses.  *Id.* at 139–41.  When questioned by defense counsel, Crockett denied telling the police that Meyers had been at her house on the evening of the offenses.  *Id.* at 141–44; March 7, 2014 Tr. 19.  To impeach Crockett's testimony, defense counsel

19

was permitted to play the audiotape of Crockett's interview conducted by Detective Geist two or three days after the offenses.  March 7, 2014 Tr. 10, 23–36.  During the interview, Crockett stated Meyers arrived at her house around 7:00 or 7:30 on Sunday evening, left to get her a sandwich and returned one to one and one half hours later  *Id.* at 23–24, 27–28.  It was clear during the interview that Crockett was referring to Sunday night.  *Id.* at 23 ("It been on a Sunday"), 24 ("I'm waiting for my daughter to come from church"), 26 ("I had to go to work the next day"[5]), 36 ("he went back out on Sunday and got my sub").

Meyers' ground 2, that the trial court violated his rights by not allowing Meyers to call his alibi witness Ernest Jones should be **DISMISSED** because:  (1) the judge did not exclude Jones from testifying, and (2) Jones' proffered testimony, that he drove Meyers to Crockett's house at 7:30 p.m. on the evening of the offense, would not aid Meyers' defense or make it more likely that the result of his trial would have been different.

> 3.      **Grounds B(10), E(1), and E(2) – Meyers was denied effective assistance of counsel due to counsel's handling of his alibi evidence.**

Meyers asserts counsel failed to subpoena his alibi witnesses and exculpatory witnesses (ground B(10)), failed to submit a notice of alibi (ground E(1)), and prejudiced Meyers' right to call alibi witnesses on his behalf (ground E(2)).  Pet. 28–29.  The Supreme Court of Virginia addressed these arguments in Meyers' habeas appeal, stating:

> petitioner contends he was denied the effective assistance of counsel when counsel failed to call Ernest Jones to testify at petitioner's trial.  Petitioner contends Jones would have testified petitioner was at Sheila Crockett's house at 7:30 p.m. on the day of the robbery.  Petitioner contends this testimony would have impeached Crockett's trial testimony that petitioner was not at her house on the day of the robbery and would have bolstered her initial account to police, in which she claimed petitioner had been at her home on the night of the robbery.

---

[5] Crockett testified that she worked Monday through Friday.  March 7, 2014 Tr. 19.

The Court holds [this] claim fails to satisfy the "prejudice" prong of the two-part test enunciated in *Strickland*.  The record, including the trial transcript, demonstrates that petitioner proffered at trial that Jones would testify he drove petitioner to Crockett's apartment building, dropped him off there at 7:26 p.m. on the night of the robbery, and left.  There is no evidence in the record that Jones saw petitioner enter Crockett's residence.  Crockett testified petitioner was not with her on the night of the robbery.  However, shortly after the robbery she told police petitioner had arrived at her home around 7:30 on the night of the robbery, that he left around 8:00 to pick up a sandwich for her, and that he returned about an hour to an hour and a half later.  Crockett also told police she had never seen petitioner being dropped off in a vehicle, nor had she ever seen him in a car.  Under the circumstances, petitioner has failed to demonstrate Jones could have provided testimony that would have been relevant or helpful to his case.  Petitioner has neither alleged nor proven that Jones could have testified petitioner actually entered Crockett's apartment on the night of the robberies, nor does the record establish Crockett ever suggested she saw petitioner being dropped off by Jones.  Thus, petitioner has not established that Jones' testimony would have either impeached Crockett's trial testimony or supported her earlier statement to police.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

ECF No. 46-6 at 8–9.

Meyers' counsel made the decision not to call Jones, who would testify he dropped Meyers off at Crockett's house at 7:30 p.m. the night of the crimes.  March 6, 2014 Tr. 22–23.  The trial court considered Jones' testimony before trial and determined Jones was not an alibi witness because he could not testify as to where Meyers was at the time of the crimes, and could not contradict Crockett's expected testimony that Meyers left her house at the time the offenses were committed.  *Id.* at 23.

Counsel was permitted to impeach Crockett's trial testimony that Meyers was not at her house on the evening of the crimes, by playing the audiotape of Crockett's interview by the police, where she told police that Meyers arrived at her house at 7:00 or 7:30 p.m., but had left for an hour or an hour and a half.  March 6, 2014 Tr. 139; March 7, 2014 Tr. 10, 17–20, 23–24, 27–28.  Counsel

also called the detective who conducted the interview to clarify that, at the time of Crockett's interview, she was addressing the night the crimes occurred, January 29. *Id.* at 10–11.

Neither Jones' potential testimony that he dropped Meyers at Crockett's house on the night of the offenses, nor Crockett's statement to police that Meyers was at her house that night but left for the period of time when the crimes occurred, provide Meyers with an alibi. The jury heard Crockett's audiotaped statement. Meyers has not shown that the result of the trial would have been different if Jones had testified that he dropped Meyers off at Crockett's house at 7:30 p.m. Meyers grounds B(10), E(1), and E(2) that counsel was ineffective in handling Meyers' alibi evidence, therefore, should be **DISMISSED**.

### 4. Grounds 3(b), 7(a)(2), and I – Counsel failed to subpoena Meyers' jail phone calls with Crockett, and the cell-tower records to bolster Meyers' alibi.

In grounds 3(b) and I, Meyers asserts counsel was ineffective for failing to subpoena the jail's recordings of telephone conversations between Meyers and Crockett. Pet. 11, 30. Meyers asserts that, "in these phone conversations [Crockett] alleged that she gave Detective Gregory Geist the wrong date and night that [Meyers] went to Lucky's Store to get her a sub sandwich." *Id.* In ground 7(a)(2), Meyers asserts counsel was ineffective for failing to subpoena cell tower records to show Meyers was at Crockett's house from 7:30 p.m. the night of the crimes through 8:30 a.m. the next day. *Id.* at 23.

The Supreme Court of Virginia addressed these claims raised in Meyers' state habeas petition, finding that the claims failed to satisfy the performance or prejudice prongs established by *Strickland*, and stating:

> [p]etitioner fails to provide the cell phone records he alleges counsel was ineffective for failing to obtain and fails to proffer any evidence to show such records would have been able to differentiate between Crockett's residence and that of the victims, which, according to Crockett's testimony, were fairly close together. Similarly, petitioner fails to provide the recorded conversations he contends counsel should

have provided, or any evidence to support his claim that such recordings existed beyond his own conclusory allegations. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

ECF No. 46-6 at 9.

Meyers has provided no evidence that any jail recordings of a conversation with Crockett exist. If a recording consistent with Meyers' recollection did exist, the recording would not have changed the outcome of Meyers' trial. As discussed in the previous sections, counsel impeached Crockett's testimony that Meyers was not at her house the night of the crimes by playing the audiotape from her police interview. In the interview, she stated that Meyers was at her house the night of the offense, but left to get a sandwich. Meyers asserts in his habeas petition that, after Crockett's interview with police, and before her testimony at trial, Crockett called Meyers at the jail and indicated that she gave Detective Geist the wrong night that Meyers left to buy her a sandwich. Pet. 11. Had counsel obtained recordings of this conversation detailing a third version of events, the hearsay recordings could not have been introduced as substantive evidence at Meyers' trial. Having introduced the police interview audiotape to impeach Crockett's trial testimony, introducing the jail recordings to further impeach Crockett's testimony would have been cumulative and of questionable value.

With respect to the cell tower records, there is no evidence Meyers had his cellphone the night of the offenses. In her statement to the police, Crockett stated Meyers called her just before coming to her house the night of the offenses. March 7, 2014 Tr. 24. She stated, "I'm going to show you where he called. He used the guy he was with phone." *Id.* Even if Meyers did have his phone that evening, there is no evidence that he took the phone with him when he left Crockett's house.

23

Further, during Crockett's interview, she suggested Rives' apartment was close to hers. *Id.* at 32.  She stated that Meyers asked her to "[g]o over there and tell them people I ain't do that." *Id.*  Crockett told the detective, "I said, I am not going over those people house because they would be coming to my house.  Their apartment – this is my apartment.  Their apartment is right there. You can just see them on the porch and everything.  They can see me coming out."  *Id.*  As noted by the Supreme Court of Virginia, there was no evidence that the cell towers could differentiate between Crockett's house and Rives' house due to the apparent proximity.

Meyers has failed to show that:  (1) a jail recording of a conversation with Crockett exists or is consistent with his recollection; (2) he had his phone with him the night of the offenses; or (3) any cell tower evidence would have distinguished between Crockett's and Rives' houses. Accordingly, grounds 3(b), 7(a)(2), and I, alleging ineffective assistance due to failure to subpoena jail call recordings and cell tower records, should be **DISMISSED**.

5. **Grounds 4 and P – Meyers was denied a fair trial because the victim's cousin was summoned for jury duty and gave false information to the jury panel about Meyers.**

In ground 4, Meyers states that the victim's first cousin, Latasha Henderson, "was a juror at my jury trial and falsely alleged to both jury panelist that [Meyers] had robbed [the victim]" in 1998 and 2012.  Pet. 13.  In ground P, Meyers asserts that, when the court asked whether any of the prospective jurors were related to the victim, Henderson lied and answered no.  *Id.* at 30.

The Supreme Court of Virginia addressed Meyers' claim:

petitioner contends Latasha Henderson was a member of the petit jury that convicted petitioner and that she was related to Rives.  Petitioner further contends Henderson lied during voir dire about her relationship with Rives.

The Court holds [this] claim [] is factually without merit.  The record, including the trial transcript and the manuscript record, demonstrates Henderson was one of the many prospective jurors called for service on the day of petitioner's trial.  There were two jury trials scheduled that day, of which petitioner's was the second.  At

the beginning of the day, the court noted that all of the jurors who were not selected for the first trial would be required to "come back" for petitioner's trial. The record does not disclose whether Henderson was present that day or whether she was selected for the first trial, but it does demonstrate she was not one of the prospective jurors who were subjected to voir dire or were empaneled for petitioner's case.

ECF No. 46-6 at 3.

The record reflects that Henderson was summoned for jury duty the day of Meyers' trial. SCV R. Sealed 1–2.[6] Henderson was one of the first 22 jurors. *Id.* The record reflects that Henderson was not brought into the courtroom for *voir dire* in Meyers' trial, and was not one of the jurors asked whether they were any relation to Maurice Rives. *Id.* at 1–2, 49–50 (seating jurors numbered 23 and higher for *voir dire*); March 6, 2014 Tr. 32–34.

Meyers' claim that Henderson was present, spoke to the jurors selected for his trial, and told those jurors he robbed Rives on two occasions is pure speculation unsupported by the record. Meyers' grounds 4 and P should be **DISMISSED**.

### 6. Grounds 7(b)(1) and O – Counsel erred in not allowing Meyers to testify about his injuries.

In ground 7(b)(1), Meyers asserts his counsel erred by refusing to allow Meyers to testify about his leg injuries and broken neck. Pet. 27. In ground O, Meyers alleges his counsel was ineffective "in not exhibiting petitioner's physical injuries to the jury, which petitioner contends would have prevented him from firing a pistol." *Id.* at 30.

Meyers presented this claim to the Supreme Court of Virginia during his state habeas appeal, along with his own affidavit and an affidavit from Latitia Browder. SCV R. 579–82, 597–99. Meyers states in his affidavit that he was in a vehicle collision in 2005, and "I have been

---

[6] "SCV R." refers to the paper record of Meyers' state habeas appeal, *Meyers v. Clarke*, Record No. 170505, received from the Supreme Court of Virginia on September 13, 2019. The record consists of unsealed documents consecutively paginated from 1 through 1643, and sealed documents consecutively paginated 1 through 282.

required to use, off and on, a cane, walker, or wheelchair since 2005 and continuing to present day." *Id.* at 579.  Browder states in her affidavit that, after the vehicle collision, "[Meyers] was required to use a cane and wear a neck brace." *Id.* at 597.  She further states, "[Meyers'] use of a cane and neck brace was off and on over the years." *Id.*

Trial counsel submitted an affidavit to the state court indicating Meyers never told him of any disability or incapacity, and described numerous locations he visited the day of the crimes. SCV R. 1600–01.  Counsel's affidavit provides:

> [I]t was simply not clear, at all, what Mr. Meyers' limitations were or were not at the time this incident occurred.  Although according to his own testimony, he was in a wheelchair the entire two years, from the date that he was arrested shortly after the incident until his trial date, it was also pretty clear that he was not in a wheelchair, or apparently suffering from such significant physical injury leading up to such time.  Mr. Meyers' alibi witness, Ms. Sheila Crockett, for example testified that even while he was with her he left to get a sandwich.  She also seemed to reject the fact that he had gotten a ride, leaving the impression that he had walked or otherwise gotten to the store on his own devices.

*Id.*

Counsel further stated that he believed, as did Meyers' previous attorney, that at least one witness had mentioned that one of the assailants leaving the scene of the crime had been limping. *Id.* at 1601.  As a result, presentation of an injury may have supported the identification testimony. *Id.*

In ruling on Meyers' habeas claim, the Supreme Court of Virginia stated:

> petitioner contends he was denied the effective assistance of counsel when counsel failed to investigate whether there was evidence to show petitioner was physically incapable of committing the crimes for which he was convicted.  Petitioner argues the evidence adduced at trial suggests the offenses were committed by two "able bodied intruders."  Petitioner alleges he has a history of knee and neck injuries and suffered a gunshot wound to the chest in 1990.  Petitioner further alleges that, as a result of these injuries, "from 2005 to the present day" he has "intermittently used a cane, a walker, or a wheelchair."  In support of this claim, petitioner has attached documents that show he required the use of a walker when he was incarcerated in 2014 and that he walked with the aid of a cane in May 2012, when he was admitted

at Central State Hospital for restoration of competency, an affidavit from petitioner stating he has been "required to use, off and on, a cane, walker, or wheelchair since 2005," and an affidavit from Latitia Browder, the mother of petitioner's child, stating that petitioner was required to use a cane and a neck brace "off and on over the years." Petitioner contends that, had counsel conducted an adequate investigation, he could have introduced this evidence to show petitioner as physically incapable of committing the charged offenses. The Court holds [this] claim [] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the affidavit of counsel, demonstrates petitioner never suggested to counsel that he was physically incapable of committing the crimes for which he was charged. Prior to trial petitioner provided counsel with a list of places he had gone with various people on the day of the crimes without indicating his prior injuries impeded his actions. In addition, counsel was aware Browder had filed a complaint against petitioner shortly before the crimes, alleging petitioner had assaulted her with a cord and threatened her life. Under the circumstances, petitioner cannot demonstrate counsel unreasonably failed to investigate this line of defense. Furthermore, none of the evidence petitioner contends counsel was deficient for failing to obtain demonstrates that petitioner was physically incapacitated at the time of the offenses, in January 2012, such that he could not have committed the crimes. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

ECF No. 46-6 at 3–4.

Meyers has proffered no evidence in his federal petition to support his claim that his injuries would have prevented him from committing the offenses in January 2012. Meyers' witness, Sheila Crockett, indicated during her audiotaped interview with the police, which was played at trial, her understanding that Meyers walked to and from her house on the night of the offenses. March 7, 2014 Tr. 27–28, 33. Meyers' counsel asserted Meyers never suggested he was physically incapable of committing the crimes, and the evidence of which counsel was aware did not support this assertion, including: (1) Meyers' description of several places he visited the day of the offenses, (2) Crockett's indication that Meyers walked to and from her home on the date of the offenses, and (3) Meyers' and Browder's statements that Meyers used assistive devices such as a cane, walker, or wheelchair "on and off" after 2005. SCV R. 1600–01. Further, counsel

indicated a decision not to highlight Meyers' physical limitations due to his, and Meyers' prior counsel's, recollection that an eyewitness stated one of the intruders had a limp. *Id.* at 1601. The evidence in the record does not support Meyers' assertion that he was physically incapable of committing the offenses, and counsel has explained his reason for not introducing evidence of Meyers' injuries at trial. Accordingly, grounds 7(b)(1) and O should be **DISMISSED**.

### 7.    Ground B(3) – Counsel erred in refusing to subpoena Greg Brown and Tommy Williams.

In ground B(3), Meyers asserts counsel refused to subpoena Greg Brown and Tommy Williams, who "possess knowledge that would have been exculpatory." Pet. 28. In a declaration filed July 2, 2019, Meyers asserts Greg Brown and Tommy Williams saw Terrance Smith and his nephew running up Rome Street on January 29, 2012, wearing all black, after robbing and shooting Rives. ECF No. 22 at 13.

On habeas review, the Supreme Court of Virginia ruled Meyers failed to prove either *Strickland* prong, stating,

> [p]etitioner alleges Brown and Williams would have testified they were the "actual robbers." Petitioner does not provide an affidavit from either witness in support of this claim, and acknowledges Brown was recently interviewed and did not provide any helpful information, but argues he is entitled to limited discovery to compel Brown and Williams to testify under oath to "settle what either witness would testify to." . . . . Petitioner has provided no basis for his claim that Brown and Williams had any useful information to provide regarding the robbery or that they would have been willing and able to do so if subpoenaed for trial.

ECF No. 46-6 at 11.

Meyers has provided no affidavits from these potential witnesses. "A reviewing court should view a claim of ineffective assistance of counsel based on a failure to subpoena witnesses with 'great caution' where, as here, the petitioner does not provide the court with any affidavits from the potential witnesses." *Cross v. United States*, No. 2:06cv457, 2007 WL 128964, at *10

(E.D. Va. Jan. 12, 2007); *see also Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001) ("Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution.").  Accordingly, ground B(3) should be **DISMISSED**.

8.      **Grounds B(5), H(4) – Counsel erred in failing to subpoena a camera system from Maurice Rives' home.**

In grounds B(5) and H(4), Meyers asserts counsel refused to subpoena a camera system from Maurice Rives' home, and failed to investigate the viability of recordings obtained from the camera system.  Pet. 28–29.

On state habeas review, the Supreme Court of Virginia found Meyers' claims did not satisfy either prong of *Strickland*, stating, "[t]he record, including the trial transcript, demonstrates that although Rives had installed a security camera on the exterior of his home, it was not operable at the time of the robbery."  ECF No. 46-6 at 11.

Maurice Rives testified that he had security cameras on the outside of his home, but that they were broken because someone had "clipped them off."  March 6, 2014 Tr. 112.  There is no other information in the record regarding the security system.  Accordingly, Meyers' assertion in grounds B(5) and H(4) that counsel was ineffective for failing to subpoena the camera system should be **DISMISSED**.

9.      **Ground B(6) – Counsel erred in failing to "thoroughly" cross-examine Edward Foxx.**

In ground B(6), Meyers asserts counsel erred in failing to "thoroughly" cross-examine Edward Foxx concerning his prior criminal history.  Pet. 28.

Edward Foxx testified at trial that he was present at Maurice and Shereasa Rives' home on the night of the offenses.  March 6, 2014 Tr. 79.  Foxx testified that he witnessed two individuals enter the apartment and commit the robbery and shooting.  *Id.* 80–88.  Foxx testified that the

individuals' faces were obscured with a hoodie and a mask, and he did not recognize either individual. *Id.* at 83–86.

Meyers' counsel cross-examined Fox. *Id.* at 89–98. During cross-examination, Foxx admitted that he had been released from jail the week prior to the offenses, that he had been convicted of selling drugs, and that his last conviction for selling drugs was in 2000 or 2001. *Id.* at 94–95.

On state habeas review, the Supreme Court of Virginia found that Meyers' claim that counsel erred in failing to thoroughly cross-examine Foxx with regard to his criminal history satisfied neither prong of the *Strickland* analysis, stating,

> [p]etitioner fails to proffer what admissible evidence counsel would have elicited had he cross examined Foxx as petitioner wished, *see* Rule 2:609(b)[7] (stating limits on impeachment of witnesses based on prior convictions), or to explain how such evidence would have altered the outcome of his case.

ECF No. 46-6 at 11–12.

Meyers has not outlined what testimony could have been elicited by further cross-examination regarding Foxx's criminal history. Moreover, Foxx did not identify Meyers, so calling into question his reliability does little to aid Meyers' defense. Meyers has failed to show counsel was ineffective in cross-examining Foxx, or that additional cross-examination would have changed the outcome of this trial. Ground B(6) should be **DISMISSED**.

---

[7] Rule 2:609(b) of the Virginia Rules of Evidence provides, "[t]he fact that any other witness has previously been convicted of a felony, or a misdemeanor involving moral turpitude, the number, and the name and nature, but not the details, of such convictions may be elicited during examination of the witness or, if denied, proved by extrinsic evidence."

10.     **Grounds B(7) and J – Counsel erred in failing to subpoena Meyers' jail records.**

In grounds B(7) and J, Meyers asserts his counsel was ineffective for failing to subpoena his jail records, which could have been used to impeach the testimony of Shereasa Rives.  Pet. 28, 30.

Shereasa Rives testified that she saw Meyers "a couple of days before" or "a week prior" to January 29, 2012, the date the crimes occurred.  March 6, 2014 Tr. 65–66.  In support of his state habeas petition, Meyers submitted records from the juvenile and domestic relations court.  SCV R. 591–96.  The records indicate that, on January 11, 2012, Meyers was charged with assault on a family member, and that he was released on bond on January 16, 2012.  *Id.* at 591–92 (Commitment Order), 593 (Release Order).

On state habeas review, the Supreme Court of Virginia found neither prong of *Strickland* satisfied, stating:

> [t]he record, including the trial transcript, demonstrates that the home invasion robbery occurred on January 29, 2012.  Counsel could reasonably have determined petitioner's incarceration from January 11, 2012 to January 16, 2012, would not have impeached Shereasa's testimony that petitioner had been in her home within the week prior to the robbery, which would have encompassed January 22 through January 28.  Moreover, counsel could have reasonably determined any attempt to impeach Shereasa with petitioner's recent incarceration would have been unnecessarily prejudicial to petitioner.

ECF No. 46-6 at 7–8.

Meyers has failed to show counsel was ineffective for failing to subpoena the records from the juvenile and domestic relations court that did not contradict Shereasa Rives' testimony, and grounds B(7) and J should be **DISMISSED**.

11.   **Grounds B(9) and M – Counsel erred in failing to seek dismissal of the charges on the basis of Meyers' feeblemindedness and to seek a third competency evaluation.**

In grounds B(9) and M, Meyers asserts his counsel erred in failing to file an "objection to trial" due to Meyers' "feeblemindedness," and in failing to move for a more recent psychological evaluation.  Pet. 28, 30.

On direct review, the Supreme Court of Virginia stated,

> In March 2012, Meyers' first court-appointed attorney filed a motion requesting that the trial court appoint a mental-health expert to conduct a competency evaluation and the trial court granted the motion.  In April 2012, Dr. Evan Nelson found that Meyers was incompetent to stand trial, which resulted in a court order that he receive psychiatric inpatient treatment to restore him to competency.  In August 2012, after Meyers received treatment, Dr. Jennifer Rasmussen determined that Meyers likely was competent to stand trial.  However, in June 2013, Meyers' new attorney filed a motion for another competency evaluation based on recent letters from Meyers that accused the attorney of "war games and retribution" based on racial hatred against Meyers and of being a member of a group conspiring to maliciously prosecute Meyers.  The trial court ordered another competency evaluation, and Dr. Nelson found Meyers competent to stand trial in August 2013.  In his report, Dr. Nelson described in detail how Meyers understood the charges against him and was able to make decisions about his own defense.  Specifically, as of the July 2013 interview for the report, "Meyers'[s] mental state was the best it had ever been."  Several different times, Meyers refused to cooperate with his evaluators, contending that he was competent to stand trial and submitting handwritten descriptions of the roles of courtroom personnel to prove his competency to stand trial.  He submitted several handwritten motions to the trial court arguing that the competency evaluations were slanderous against him.

ECF No. 46-4 at 3.

On state habeas review, the Supreme Court of Virginia found Meyers failed to demonstrate either prong of *Strickland*, finding he "fail[ed] to articulate any grounds upon which counsel could reasonably have moved for a third evaluation or otherwise argue[] petitioner was not competent to stand trial."  ECF No. 46-6 at 12–13.

In his federal petition, Meyers provides no facts and no argument in support of these two claims.  Pet. 28, 30.  Accordingly, Meyers has failed to show the decision by the Supreme Court

of Virginia was contrary to federal law or was based upon an unreasonable determination of the

facts, and grounds B(9) and M should be **DISMISSED**.

> 12.    **Grounds C(1), C(3), G, and L – Counsel erred in failing to effectively argue Meyers' innocence.**

Meyers asserts counsel rendered ineffective assistance by "diminishing" Meyers' defense

(ground C(1)), remarking to the jury that Meyers was guilty of crimes (ground C(3)),  making his

opening statement (ground G), and failing to effectively argue Meyers' innocence (ground L).  *Id.*

at 28–30.

On habeas review, the Supreme Court of Virginia found Meyers failed to satisfy either

prong of *Strickland*, stating:

> The record, including the trial transcript, demonstrates that counsel conceded during opening argument that the evidence would show the victims were robbed and that Rives was shot, but argued the evidence would not establish petitioner was one of the perpetrators.  In closing argument, counsel vigorously argued petitioner's innocence.  Counsel did not concede petitioner's guilt.

ECF No. 46-6 at 13.

Counsel did not suggest in opening or closing argument that Meyers committed any crime.

March 7, 2014 Tr. 84–97.  In opening, counsel conceded that Maurice and Shereasa Rives were in

their home with Edward Foxx when two men came in and one shot Maurice Rives.  March 6, 2014

Tr. 54.  Counsel explained that Maurice Rives, Shereasa Rives, and Edward Foxx were convicted

felons and drug distributors, and that the intruders were seeking drugs and money.  *Id.* at 55.

Counsel emphasized that when initially interviewed by police, none of the victims identified

Meyers, who was only later identified by the victims.  *Id.* at 54–57.  Lastly, counsel noted there

was no evidence, other than the victims' identification, to link Meyers to the offenses.  *Id.* at 56–

57.

During closing arguments, counsel again indicated that he agreed with the Commonwealth that the three individuals were in the home when the offenses occurred.  March 7, 2014 Tr. 85.  He reiterated that the victims were all convicted felons, two were drug distributors and one was a drug user.  *Id.* at 85, 88–89.  He also noted that Maurice Rives had a white powdery substance in his jeans that was presumably drugs.  *Id.* at 89.  He drew attention to Maurice Rives' testimony that he had known Meyers for years, but following the offenses, he told the police that one of the intruders looked like someone from a Chinese delivery shop and he could not identify the other intruder.  *Id.* at 87, 91–92.  He noted that, when Shereasa Rives was questioned by police the night of the offenses, she repeatedly stated she did not know either of the intruders although one may have looked like a guy named Zo.  *Id.* at 89–90.  Only later, and possibly after talking with her husband, did Shereasa Rives identify Meyers.  *Id.* at 90.

Counsel pointed out that Shereasa Rives testified Meyers had previously robbed Maurice Rives and had been found not guilty, suggesting Maurice Rives had a "grudge" against Meyers. *Id.* at 90–91.  He emphasized that there was no physical evidence to tie Meyers to the offenses. *Id.* at 91.  Counsel further noted that Meyers told the police he was at Sheila Crockett's house that evening, and never changed his story.  *Id.* at 92.

In opening statements and closing arguments, counsel challenged the credibility of witnesses who suggested Meyers was involved in the offense, and emphasized that no reliable evidence connected Meyers to the crimes.  Counsel did not diminish Meyers' defense or suggest that Meyers was guilty, but insisted Meyers was innocent.  Meyers has not shown that the Supreme Court of Virginia erred in concluding that counsel rendered effective assistance during his opening statement or closing argument, and grounds C(1), G, and L should be **DISMISSED**.

13.     **Ground C(2) – Counsel failed to move for discovery concerning drugs found on the victim.**

In ground C(2), Meyers alleges counsel was ineffective for failing to submit a discovery motion concerning "the large quantity of narcotics" recovered from Maurice Rives.  Pet. 28.  A detective testified that a clear plastic baggy with an off-white chunky substance was found in the zipper of a pair of jeans found in the residence.  March 6, 2014 Tr. 120.  Counsel cross-examined Rives regarding the baggy found in the zipper of his pants on the night of the offenses.  *Id.* at 110–11.  Rives admitted the drugs were found, but asserted Meyers had planted the drugs.  *Id.*  Rives also conceded that he was a convicted drug dealer.  *Id.* at 109–10.

On habeas review, the Supreme Court of Virginia found Meyers failed to satisfy either prong of *Strickland*, stating,

> [t]he record, including the trial transcript and the affidavit of counsel, demonstrates that counsel learned through discovery that Rives was in possession of apparent narcotics when he was shot, although the "off-white, chunky substance" found in a plastic bag in Rives' trousers was not tested.  Counsel elicited testimony regarding this point at trial, as well as Rives' history of drug distribution.  Petitioner fails to identify any additional evidence on this point that counsel failed to obtain through discovery.

ECF No. 46-6 at 13.

In his petition, Meyers does not proffer any information counsel could have uncovered in discovery, and used at trial to cross-examine or impeach the Commonwealth's witnesses, that was not already used by counsel during his trial.  Meyers has not explained how the result of his trial would have been different through counsel's use of additional discovery for impeachment.  Therefore, Meyers' ground C(2) should be **DISMISSED**.

14.    **Ground D – Counsel rendered ineffective assistance due to counsel's motion to sever the charge of possession of a firearm by a convicted felon.**

Meyers asserts counsel rendered ineffective assistance "in moving to sever the trial of a charge of possessing a firearm after having previously been convicted of a felony from the underlying offenses for which Meyers was convicted." Pet. 28.

The Supreme Court of Virginia, on habeas review, found this claim failed to satisfy either prong of *Strickland*, stating,

> [p]etitioner appears to assert that requiring him to stand trial separately for this offense amounted to a double jeopardy violation.
> . . . .
>
> The record, including the manuscript record, demonstrates petitioner was indicted for possession of a firearm by a convicted felon in connection to the home invasion robbery of Rives and Shereasa's home, but that the Commonwealth moved for entry of a nolle prosequi as to that charge, which motion the court granted.

ECF No. 46-6 at 12.

Meyers has failed to show that counsel's moving to sever the gun offense was deficient or that, but for counsel's motion, the result of the proceeding for the remaining offenses would have been different.  Moreover, according to the "Virginia Courts Case Information" online service, Meyers' charge of felon in possession of a firearm was *nolle prossed* on March 7, 2014. *Commonwealth v. Meyers*, No. CR12001251-00 (Va. Cir. Mar. 7, 2014).  Accordingly, Meyers' ground D, asserting counsel was ineffective due to counsel's motion to sever the charge of possession of a firearm by a convicted felon, should be **DISMISSED**.

15.    **Ground K – Counsel erred in leaving the courtroom during Meyers' trial.**

In ground K, Meyers asserts his counsel rendered ineffective assistance when he left the courtroom during Meyers' trial to "converse with a witness, Letitia Brewer." Pet. 30.

On state habeas review, the Supreme Court of Virginia found neither prong of *Strickland* satisfied, stating:

> The record, including the trial transcript, demonstrates petitioner's counsel called Shereasa as a part of his case in chief on the second day of petitioner's trial. Petitioner's counsel conducted the direct examination and the Commonwealth declined to cross examine the witness. Moreover, petitioner provides no support for his claim that the transcript does not accurately represent what occurred during petitioner's trial and fails to proffer the testimony he alleges Shereasa provided that was not accurately recorded.

ECF No. 46-6 at 10–11.

Meyers attaches to his federal petition an annotated copy of the trial transcript for March 7, 2014, indicating with arrows when counsel left the courtroom, and when he reentered the courtroom. Pet. at 39–40. On direct examination of Shereasa Rives, Meyers' counsel asked Shereasa Rives, "would you say Maurice Rives, to your knowledge, has a grudge against my client?" March 7, 2014 Tr. 46–47. The annotations indicate that, after asking the question, counsel left the courtroom, but reentered the courtroom before Shereasa Rives answered "No." Pet. at 39.

Meyers indicates that counsel left the courtroom for a second time after defense counsel concluded his examination of Shereasa Rives. *Id.* The transcript reflects that counsel for the Commonwealth had no questions for Shereasa Rives. March 7, 2014 Tr. 47. Meyers contends that the transcript is incorrect and that counsel for the Commonwealth actually asked Shereasa Rives "several other questions" while Meyers sat alone. Pet. at 39. According to Meyers, defense counsel only reentered the courtroom after the Commonwealth finished cross-examining Shereasa Rives. *Id.*

The transcript reflects that, after Shereasa Rives stepped down from the witness stand, defense counsel asked that the jury step out, and a discussion took place between the judge and counsel. March 7, 2014 Tr. 47. Defense counsel indicated he had two very brief witnesses to call,

and counsel for the Commonwealth objected because defense counsel had spoken to someone at the doorway.  *Id.*  There is no indication in the transcript that this took place while Shereasa Rives was on the stand.

Further, Meyers has failed to identify any testimony by Shereasa Rives to which counsel could have a lodged a valid objection.  *See Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990).  Accordingly, ground K, alleging ineffective assistance of counsel due to counsel's leaving the courtroom during Meyers' trial, should be **DISMISSED**.

## III.    RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that respondent's motion to dismiss, ECF No. 45, be **GRANTED**, and the petition for a writ of habeas corpus, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE**.

## IV.    REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.      Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail.  A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof.  *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

      2.     A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

      The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/
Robert J. Krask
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
June 15, 2020

**<u>Clerk's Mailing Certificate</u>**

A copy of the foregoing was provided electronically to counsel for respondent and was

mailed this date to:


David Meyers, #1039777
Sussex I State Prison
24414 Musselwhite Dr.
Waverly, VA 23891


Fernando Galindo, Clerk


By ___/s/ J.L. Meyers_____
         Deputy Clerk


June ___15___, 2020

40